E-FILED
Monday, 09 September, 2019  03:55:18 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| KIMBERLY BRIGHAM, Individually and )<br>as Independent Administrator of the )<br>Estate of JAMES B. BRIGHAM, Deceased, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COLES COUNTY, ILLINOIS, )<br>JIMMY RANKIN, COLES COUNTY )<br>DEPUTIES WILLIAM BILBREY, )<br>SAMUEL A. JACKSON, & )<br>DEPUTY JOHN DOE )<br>(ID# 288), )<br>)<br>Defendants. ) | Case No.  2019-CV- _____<br><br>PLAINTIFF DEMANDS<br>TRIAL BY JURY |

**<u>COMPLAINT</u>**

NOW COMES the Plaintiff, KIMBERLY BRIGHAM, Individually and as the Independent Administrator of the ESTATE OF JAMES B. BRIGHAM, deceased, by and through her attorneys, CHAD S. BECKETT, ANDREW W. B. BEQUETTE and JUAN C. BERNAL of BECKETT LAW OFFICE, P.C., and for her Complaint against the above-named Defendants, states as follows:

**<u>INTRODUCTION</u>**

1.     Plaintiff, KIMBERLY BRIGHAM, individually and as the Independent Administrator of the ESTATE OF JAMES B. BRIGHAM, deceased, brings this complaint to seek redress and damages, under 42 U.S.C. §1983 and the common law and statutes of the State of  Illinois for the death of JAMES B. BRIGHAM directly and proximately resulting from the unreasonable, deliberately indifferent, and conscience shocking conduct and official policies of

1

the Defendants identified herein, which violated the constitutional and state common law rights of the Plaintiff and her deceased husband.

## JURISDICTION AND VENUE

2.      This is a civil action arising under the Fourteenth Amendment to the United States Constitution; The Civil Rights Act of 1964 – 42 U.S.C. §1983 and § 1988; the Illinois Constitution, Article I §2, §12, §23 and §24; Illinois State Law – 740 ILCS §180/0.01 et seq. and Illinois common law.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343(a)(3), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) insofar as the events giving rise to the claims described herein all occurred within this judicial district.

## PARTIES -- PLAINTIFFS

5.      JAMES B. BRIGHAM (hereinafter sometimes referred to as "Mr. Brigham" or "Decedent"), was a United States Citizen.  At all times relevant hereto Mr. Brigham resided in the City of Mattoon, Coles County, State of Illinois.  Mr. Brigham died on January 24, 2019 due to injuries he sustained on January 22, 2019 while he was in the Coles County Courthouse, located at 651 JACKSON Street, Charleston Illinois, under the custody of Defendant JIMMY RANKIN, the Sheriff of Coles County, Illinois (hereinafter "Defendant RANKIN") as a pretrial detainee.

6.      Plaintiff, KIMBERLY BRIGHAM (hereinafter sometimes referred to as "Mrs. Brigham"), is a United States Citizen, the widow of JAMES B. BRIGHAM, and the independent

administrator of his estate pursuant to the *Order for Issuance of Letters of Administration* entered on February 20, 2019 in Coles County Probate Case No. 19-P14.  At all times relevant hereto KIMBERLY BRIGHAM resided in the City of Mattoon, Coles County, State of Illinois. KIMBERLY BRIGHAM brings this action on behalf of herself, her deceased husband, and the Decedent's heirs.

## **PARTIES -- DEFENDANTS**

7.      Defendant, JIMMY RANKIN (also referred to herein as "Defendant RANKIN"), is the duly elected sheriff of Coles County, Illinois and chief administrator of the Coles County Jail.  At all times relevant hereto, Defendant RANKIN was acting under color of law and in the course and scope of his employment as the agent, servant and an official policymaker for Defendant COLES COUNTY, ILLIONIS on issues relating to the care of prisoners in the Coles County Jail and the policies, procedures, practices, and customs, as well as the actions and omissions, challenged by this suit, and as Coles County's chief law enforcement officer. Defendant RANKIN was the commanding officer of all Coles County sheriff's deputies, correctional officers, and jail employees, and he was responsible for their training, supervision, and conduct.  He is sued individually and in his official capacity as the Sheriff of Coles County.

8.      Defendant COLES COUNTY, ILLINOIS is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003) and also as a result of its failure to correct dangerous conditions at the Coles County Courthouse that are alleged below despite previous warning and clear notice of said dangerous conditions.

9.      Defendant WILLIAM BILBREY, is a correctional officer under the supervision of the Defendant RANKIN, and at all times relevant hereto, he was an employee and agent of

Defendants JIMMY RANKIN and COLES COUNTY, ILLINOIS, acting under color of law in the course and scope of his employment.  All times relevant to this Complaint, James B Brigham was a detainee subjected to the care, custody and control of Defendant BILBREY. Defendant BILBREY is sued in his individual capacity.

10.      Defendant SAMUEL JACKSON, is a correctional officer under the supervision of the Defendant RANKIN, and at all times relevant hereto, he was an employee and agent of Defendants JIMMY RANKIN and COLES COUNTY, ILLINOIS, acting under color of law in the course and scope of his employment.  All times relevant to this Complaint, James B Brigham was a detainee subjected to the care, custody and control of Defendant JACKSON. Defendant JACKSON is sued in his individual capacity.

11.      Defendant JOHN DOE (OFFICER ID # 288), is a correctional officer under the supervision of the Defendant RANKIN, and at all times relevant hereto, he was an employee and agent of Defendants JIMMY RANKIN and COLES COUNTY, ILLINOIS, acting under color of law in the course and scope of his employment.  All times relevant to this Complaint, James B Brigham was a detainee subjected to the care, custody and control of Defendant JOHN DOE. Defendant JOHN DOE is sued in his individual capacity.

12.      Defendant, COLES COUNTY, ILLINOIS, is a governmental entity within the State of Illinois which funds and operates the Coles County Jail and Coles County Courthouse, and is at all times relevant hereto, required to indemnify Defendant Rankin, as well as all other employees, contractors and agents.

## **FACTS COMMON TO ALL COUNTS**

13.     As early as October of 2018, Plaintiff, KIMBERLY BRIGHAM, learned that her husband, Plaintiff, JAMES BRIGHAM, was contemplating ending his life after she found a suicide note which Mr. Brigham had written on the back of a copy of his birth certificate.

14.     To protect her husband's life, Mrs. Brigham provided to the Mattoon Police Department the suicide note that Mr. Brigham had written on the back of his birth certificate and asked them to locate her husband and ensure he did not present a threat to himself or others.

15.     On information and belief, Mattoon Police Department contacted Mr. Brigham via phone but did not follow up with him to discern whether he presented a threat to himself or others.

16.     On December 28, 2018, Mrs. Brigham once again contacted the Mattoon Police Department because Mr. Brigham again expressed his intentions to end his life.  Specifically, Mrs. Brigham contacted Mattoon Police Officer, Ryan Koop (officer Id #86), via text message and asked him to "ping" and locate her husband's cellphone, after Mr. Brigham communicated his intentions to end his life by consuming antifreeze.

17.     After locating Mr. Brigham's cellphone, Officer Ryan Koop (officer Id #86), Mattoon Police Chief, Jason Taylor, and unidentified  deputies of Defendant RANKIN responded to 16689 ECR 420 N. in Charleston Illinois, where they found Mr. Brigham, who immediately indicated that he had just consumed a half-gallon of antifreeze and was not feeling well.

18.     As a result of the above-described suicidal actions, Mr. Brigham was transported to the emergency room of the Sarah Bush Lincoln Health Center ("SBLHC"), at 1000 Health

5

Center Drive, Mattoon, Illinois 61938, to receive immediate medical treatment. Mr. Brigham was subsequently transported to Carle Foundation Hospital, at 611 W. Park Street, Urbana, Illinois 61801, to receive specialized poisoning-treatment SBLHC could not provide.

19.     On December 29, 2018, after being released from Carle Foundation Hospital, Mr. Brigham was arrested by Urbana Police Department and subsequently transferred to the Coles County Jail to be in the custody of Defendant RANKIN.

20.     Once in the custody of the Defendant RANKIN, Defendant, SAMUEL A. JACKSON, as the booking officer on duty, was responsible for conducting the booking process of Mr. Brigham in accordance with the policies and procedures of the Defendant RANKIN.

21.     Per Policy No. 211 of the Defendant RANKIN, Defendant JACKSON, as the booking officer, was responsible for screening Mr. Brigham for obvious mental conditions or attitudes that could endanger Mr. Brigham or others, by filling out a "Medical Screening Form".

22.     In direct violation of Policy No. 211, the booking officer, Defendant JACKSON, failed to conduct the booking process of Mr. Brigham in accordance with the policies and procedures of the Defendant RANKIN, in one or more of the following ways:

    a.  Defendant JACKSON did not screen Mr. Brigham for obvious mental conditions or attitudes that could endanger Mr. Brigham or others;

    b.  Defendant JACKSON did not fill out a "Medical Screening Form" in relation to Mr. Brigham's booking process;

    c.  Defendant JACKSON failed to check the accuracy of Mr. Brigham's intake information, when he knew or should have known some of this information to be incorrect;

d.  Defendant JACKSON failed to complete a "Suicide Prevention Screening Form" for Mr. Brigham, when he knew or should have known that Mr. Brigham was at risk of committing suicide;

e.  Defendant JACKSON failed to conduct any further screening of Mr. Brigham to determine proper recommendations for mental health care;

f.  Defendant JACKSON failed to consult the Coles County Mental Health Department to assist in the determination of the proper mental health care that Mr. Brigham required;

g.  Defendant JACKSON failed to notify his shift supervisor about Mr. Brigham's immediate needs for mental health care;

h.  Defendant JACKSON failed to record Mr. Brigham's immediate need for mental health care in the back of Mr. Brigham's medical screening form;

i.  Defendant JACKSON failed to contact the Coles County Mental Health Department worker on-call despite Mr. Brigham's need for emergency mental health counseling.

23.  In direct violation of Policy No. 211, Defendant JOHN DOE (Officer Id. #288) failed to conduct the booking process of Mr. Brigham in accordance with the policies and procedures of the Defendant RANKIN, in one or more of the following ways:

a.  Defendant JOHN DOE (Officer Id. #288) did not adequately screen Mr. Brigham for obvious mental conditions or attitudes that could endanger Mr. Brigham or others;

b.  Defendant JOHN DOE (Officer Id. #288) did not fill out a "Medical Screening Form" in relation to Mr. Brigham's booking process;

c.  Defendant JOHN DOE (Officer Id. #288) failed to check to accuracy of Mr. Brigham's intake information, when he knew or should have known some of this information to be incorrect;

d.  Defendant JOHN DOE (Officer Id. #288) failed to complete a "Suicide Prevention Screening Form" for Mr. Brigham, when knew or should have known that Mr. Brigham was at risk of committing suicide;

e.  Defendant JOHN DOE (Officer Id. #288) failed to conduct any further screening of Mr. Brigham to determine proper recommendations for mental health care;

f.  Defendant JOHN DOE (Officer Id. #288) failed to consult the Coles County Mental Health Department to assist in the determination of the proper mental health care that Mr. Brigham required;

g.  Defendant JOHN DOE (Officer Id. #288) failed to notify his shift supervisor about Mr. Brigham's immediate needs for mental health care;

h.  Defendant JOHN DOE (Officer Id. #288) failed to record Mr. Brigham's immediate need for mental health care in the back of Mr. Brigham's medical screening form;

i.  Defendant JOHN DOE (Officer Id. #288) failed to contact the Coles County Mental Health Department worker on-call despite of Mr. Brigham's need for emergency mental health counseling.

24.     Given the circumstances leading up to Mr. Brigham's arrest, Defendant JACKSON, Defendant JOHN DOE (Officer Id. #288), and other agents of the Defendant RANKIN knew or should have known that Mr. Brigham presented a danger to himself and others due to his mental health and recent suicide attempts.

25.     Given the condition of Mr. Brigham's mental health at the time of arrest, Defendant JACKSON, Defendant JOHN DOE (Officer Id. #288), and other agents of Defendant Rankin and the Defendant RANKIN were responsible for completing a "Suicide Prevention Screening Form" to determine the proper recommendations for housing and mental health care of Mr. Brigham.

26.     Given the conditions of Mr. Brigham's mental health at the time of arrest, Defendant JACKSON, Defendant JOHN DOE (Officer Id. #288), and other agents of Defendant RANKIN were also responsible for placing Mr. Brigham in a "counsel booth" and contacting the Coles County Mental Health Department to conduct an examination of Mr. Brigham to determine necessary medical treatment.

27.     Members of the Defendant RANKIN, including deputies, correctional officers at the Coles County Jail and security officers at the Coles County Courthouse, had been notified or otherwise received information that Mr. Brigham was a suicide risk, that he had previously attempted to commit suicide, and that his family and friends were afraid that he would attempt to commit suicide again.

28.     Despite Defendants' knowledge that Mr. Brigham required immediate medical treatment to address his mental health issues and was a suicide risk, Defendant JACKSON, Defendant JOHN DOE (Officer Id. #288), as well as all other agents Defendant RANKIN, failed

to follow the promulgated policies in direct disregard of Mr. Brigham's safety and the safety of all other persons that could or would come into contact with Mr. Brigham.

29.     Despite Defendants' knowledge that Mr. Brigham required immediate medical treatment to address his mental health issues and was a suicide risk, Defendants failed to provide Mr. Brigham any mental health treatment.

30.     Defendants failed to provide Mr. Brigham any mental health treatment during the twenty-two days preceding the incident complained of herein during which Mr. Brigham was in the custody of Defendant RANKIN.

31.     On information and belief, on January 21, 2019, the night before the incident complained of herein, Mr. Brigham had a discussion with Cody Carter, also an inmate at the Coles County Jail, during which Mr. Brigham described his plans to hang himself in the jail or to jump off one of the balconies in the Coles County Courthouse.

32.     On information and belief, Cody Carter discussed Mr. Brigham's mental health and desire to commit suicide with other inmates and detainees at the Coles County Jail.

33.     Defendants failed to provide Mr. Brigham any mental health treatment despite having ample opportunity to recognize, evaluate, and address his suicidal tendencies.

**Incident at Coles County Courthouse Leading to Suit:**

34.     On January 22, 2019, Mr. Brigham was scheduled to appear in Courtroom No. 3 of the Coles County Courthouse for a divorce proceeding.

35.     On information and belief, the staff of the Defendant RANKIN were aware that court appearances, and especially divorce proceedings, are stressors that increase the risk of

suicide of inmates and detainees, particularly those which are already exhibiting suicidal tendencies.

36.   Defendant RANKIN's staff had received notice that Mr. Brigham was experiencing heightened levels of stress in connection to his pending divorce hearing prior to January 22, 2019.

37.   On at least one occasion prior to January 22, 2019, Mr. Brigham discussed plans to hang himself in the Coles County Jail or jump off the Coles County Courthouse with other inmates at the Coles County Jail.

38.   As a result of his pending divorce, and his other actions alleged herein, Defendant RANKIN's staff knew or should have known that Mr. Brigham was contemplating committing suicide during his incarceration.

39.   Defendant RANKIN staff failed to monitor Mr. Brigham's behavioral patterns and attitudes to determine that he presented a danger to himself or others even though they had information to believe and confirm he did present such a danger.

40.   The morning of January 22, 2018, while at the Coles County Courthouse, Defendant, SAMUEL JACKSON, received a phone call from a female individual who expressed concern that Mr. Brigham had expressed interest in killing himself due to his pending divorce proceeding.

41.   Defendant JACKSON, failed to communicate this information to his supervisor or any other agent of the Defendant RANKIN, and failed to conduct a suicide screening to ensure the safety of Mr. Brigham and those around him while he was at the Coles County Courthouse the afternoon of January 22, 2018.

42.     Per Policy No. 221 promulgated by the Coles County Sheriff's Office, it was the responsibility of the Defendant RANKIN Corrections Staff to coordinate the transportation of Mr. Brigham from the Coles County Jail to the Coles County Courthouse in a manner that protected the safety and security of Mr. Brigham, the transporting officer, and the general public.

43.     Per Policy No. 221 promulgated by the Coles County Sheriff's Office, Mr. Brigham was to be escorted to and from the courthouse via the security tunnel, which connects the Coles County Jail and the Coles County Courthouse, and then be immediately taken to the appropriate courtroom –Courtroom No.3 — via the rotunda stairway.

44.     Per Policy No. 221 promulgated by the Coles County Sheriff's Office, Mr. Brigham's exposure to the outside hallways or rotunda of the courtroom was to be kept to a minimum by ensuring Mr. Brigham was immediately taken into the appropriate courtroom upon arrival at the courthouse, or a jury room if his presence was not immediately required in the courtroom.

45.     On January 22, 2019, Defendant BILBREY, as a correctional officer of the Defendant RANKIN, was responsible for transporting Mr. Brigham from the Coles County Jail to Courtroom No. 3 of the Coles County Courthouse for the pending divorce proceeding.

46.     Defendant BILBREY, as the assigned officer in charge of escorting Mr. Brigham to and from the Coles County Courthouse, was responsible for maintaining, at all times relevant hereto, the safety and security of Mr. Brigham in all situations.  Defendant BILBREY was to be no further than eight-feet away from Mr. Brigham at all times and in constant visual contact.

47.     On January 22, 2019, at approximately 3:20p.m., Defendant BILBREY transported Mr. Brigham from the Coles County Jail to the Coles County Courthouse via the security tunnel connecting the two facilities.

48.     Once at the courthouse, Defendant BILBREY radioed court security to inform them he was bringing Mr. Brigham up the stairs to Courtroom No. 3, which is located on the second floor of the Coles County Courthouse.

49.     Defendant BILBREY then escorted Mr. Brigham throughout the Coles County Courthouse while trying to ascertain whether Mr. Brigham's divorce proceeding was scheduled in Courtroom No. 3, instead of taking him directly to said courtroom or a jury room if his presence was not immediately required in the courtroom. Defendant's BILBREY conduct was in direct violation of Policy No. 221 promulgated by the Coles County Sheriff's Office.

50.     After entering Courtroom No. 3, Mr. Brigham attempted to speak to his wife, Mrs. Brigham, who was already inside the courtroom. Per Policy No. 221 promulgated by the Coles County Sheriff's Office, Mr. Brigham was not allowed to engage in conversation with or come into close contact with Mrs. Brigham while at the courthouse.

51.     Upon being told by Mr. Brigham that he felt ill, Defendant BILBREY temporarily removed Mr. Brigham from the courtroom. Instead of taking Mr. Brigham to a jury room to wait for his case to be called, Defendant BILBREY escorted Mr. Brigham to a hallway by the courthouse rotunda, in direct violation of Policy No. 221 promulgated by the Coles County Sheriff's Office.

52.     Once Mr. Brigham's case was called, Defendant BILBREY escorted Mr. Brigham inside Courtroom No. 3, at which time the Court entered findings in support of a Judgment of

13

Dissolution of Marriage but did not enter such an order; instead the Court directed Petitioner Mrs. Brigham to prepare a written order.   No such order was ever entered and the cause was later dismissed with prejudice upon motion by Petitioner Mrs. Brigham.

53.     Mr. Brigham was clearly and visible troubled during the divorce hearing.  At the conclusion of the hearing, Mr. Brigham said to Mrs. Brigham "I will always love you."

54.     At the conclusion of the divorce hearing, Defendant BILBREY allowed Mrs. Brigham to exit the courtroom first before proceeding himself  with Mr. Brigham.

55.     A few moments after Mrs. Brigham exited the courtroom, Defendant BILBREY opened the door to Courtroom No. 3 and, on information and believe, proceeded to visibly scan the hallway for others present before preparing to return Mr. Brigham to the county jail.

56.     At the time the events in the prior paragraph occurred, Mr. Brigham exited the courtroom into the hallway, moved to the edge of the walkway railing overlooking the rotunda, pitched himself over the side of the railing, and then fell violently onto the first floor common area beneath the rotunda, where he sustained injuries that ultimately led to Mr. Brigham's death (hereinafter referred to as "the Fall").

57.     At the time of the Fall, Defendant BILBREY failed to maintain visual contact with Mr. Brigham.

58.     The Fall was a direct and proximate result of Defendant BILBREY's failure to adhere to the policies and procedures of Defendant RANKIN.

59.      The Fall was also a direct and proximate result of the deficient conduct of other agents of Defendants Rankin; Defendant RANKIN failed to provide Mr. Brigham the mental

health treatment he desperately needed, despite having knowledge that he was at risk of committing suicide.

60.     As the Fall was in progress, Mrs. Brigham was walking through the first floor common area of the Coles County Courthouse below the rotunda when she heard someone yelling, which caused her to look up and see her husband, Mr. Brigham, falling towards her from the second-floor.

61.     When Mrs. Brigham realized the Fall was in progress, Mrs. Brigham was forced to run out of the way to avoid having her husband land on top of her.

62.     On information and belief, the Fall resulted in Mr. Brigham landing on the left side of his face and left-front side of his body.

63.     As a result of the Fall, Mr. Brigham suffered significant injuries including, but not limited to, fractures to his facial and cranial bones, fractures to his left and right ribs and pelvis, lacerations to his spleen, and severe emphysema to his lungs.

64.     On information and belief, Mr. Brigham experienced excruciating pain as a result of the above-referenced injuries incident to the Fall.

65.     On information and belief, Mr. Brigham experienced excruciating pain until he died two days later, on January 24, 2019, as a result of the injuries that resulted from the Fall.

66.     At all times relevant hereto, Defendant BILBREY, as well as all other agents of the Defendant RANKIN working at the Coles County Jail or Coles County Courthouse, failed to monitor Mr. Brigham's behavioral patterns and attitudes to determine that he presented a danger to himself or others.

67.     The Fall would not have occurred but for the deficient conduct of Defendant BILBREY, Defendant JACKSON, Defendant JOHN DOE (Officer Id. #288), and the other agents of Defendant RANKIN in failing to coordinate their actions, monitor and provide adequate care for at-risk individuals like Mr. Brigham, sufficient to prevent incidents like the Fall.

68.     But for the absence of adequate policies and procedures of the Defendant RANKIN concerning suicide prevention and monitoring of at-risk individuals, the Fall would not have occurred.

69.     Defendant RANKIN knew that its policies concerning mental health care and the monitoring of individuals with mental health issues were ineffective in providing adequate medical treatment.

70.     Defendant RANKIN knew that its policies concerning the transportation of at-risk inmates within the Coles County Courthouse were ineffective in protecting individuals at risk of committing suicide.  Specifically, the Defendant RANKIN was on notice of one or more prior occasions in which an individual in the Sheriff's custody had jumped or attempted to jump from the upper levels of the Coles County Courthouse with the intention of committing suicide.

71.     Despite having knowledge of the ineffectiveness of its policies concerning the treatment of individuals with mental health issues and the transportation of individuals under their custody at the Coles County Courthouse, Defendant RANKIN refused to make any changes to its policies to prevent incidents like the Fall.

72.     Despite having knowledge of one or more prior incidents where inmates in the custody of the Defendant RANKIN and his agents had attempted to commit suicide by jumping

from the second story balcony in a similar manner as Mr. Brigham did in the Fall, Defendants COLES COUNTY, ILLINOIS, Defendant RANKIN and the other Defendants failed to make improvements to the second floor of the Coles County Courthouse or to the manner of transporting inmates on the second floor of said Courthouse; the Defendant's knowledge of onr or more prior suicide attempts as alleged herein are set forth in the attached newspaper articles (See, Exhibit #1, Journal Gazette & Times Courier, "Sheriff Says Deputies Handled Courthouse Jump Incident Properly" September 26, 2014;  Exhibit #2, cornerstone.com, "No Policy Changes After Man Jumps From Courthouse Second Floor" September 30, 2014; the text of and quotations within both articles are incorporated herein by reference.)

## COUNT I
## FOURTEENTH AMENDMENT VIOLATION – 42 U.S.C. § 1983
### *Deliberate Indifference to Objectively Serious Medical Need*

73.     Plaintiffs incorporate by reference and reallege ¶¶ 1 through 72, above, as if fully set forth herein.

74.     At all times relevant hereto, Mr. Brigham, as a pretrial detainee in the custody of the Defendant RANKIN, enjoyed the rights and privileges secured by the Due Process clause of the Fourteenth Amendment to the Constitution of the United States of America and by a similar clause in Section Two of Article I of the Illinois State Constitution to be free from the deliberate indifference of governmental actors, charged with his care, custody and/or control, to his objectively serious mental health needs without due process of law.

75.     All Defendants were deliberately indifferent to Mr. Brigham's objectively serious mental health needs.

17

76.     As a direct and proximate cause of all Defendants' deliberate indifference, Mr. Brigham suffered extensive and fatal injuries on January 22, 2019, while in the care, custody and/or control of the Defendant RANKIN.

77.     But for Defendants' deliberate indifference, Mr. Brigham would not have suffered the extensive and fatal injuries above-referenced.

WHEREFORE, pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against the Defendants, and award Plaintiffs an amount of damages in excess of Fifty-Thousand ($50,000.00) dollars, a specific amount to be determined at trial, including compensatory damages, punitive damages, attorney's fees, court costs and expenses, all other damages recoverable under Federal or Illinois law, and any other relief that the Court deems just as proper.

### COUNT II
### FOURTEENTH AMENDMENT VIOLATION – 42 U.S.C. § 1983
*Deliberate Indifference to Objectively Serious Unsafe Conditions of Confinement*

78.     Plaintiffs incorporate by reference and reallege ¶¶ 1 through 77, above, as if fully set forth herein.

79.     At all times relevant hereto, Mr. Brigham, as a pretrial detainee in the custody of the Defendant RANKIN, enjoyed the rights and privileges secured by the Due Process clause of the Fourteenth Amendment to the Constitution of the United States of America to be free from the deliberate indifference of governmental actors, charged with his care, custody and/or control.

80.     Defendants were deliberately indifferent to Mr. Brigham's safety and failed to take reasonable measures to guarantee Mr. Brigham's safety, as evidence by (but not limited to)

(1) their knowledge that the facilities at the Coles County Courthouse were dangerous and prone to suicide attempts in the past similar to the Fall as alleged herein and (2) the policies at issue in this matter were inadequate in facilitating conditions of confinement that guaranteed the safety of individuals in the custody of the Defendant RANKIN while at the Coles County Courthouse.

81.     As a direct and proximate cause of Defendants' deliberate indifference, Mr. Brigham suffered extensive and fatal injuries on January 22, 2019, while in the care, custody and/or control of the Defendant RANKIN.

82.     But for Defendants' deliberate indifference, Mr. Brigham would not have suffered the extensive and fatal injuries above-referenced.

WHEREFORE, pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against the Defendants, and award Plaintiffs an amount of damages in excess of Fifty-Thousand ($50,000.00) dollars, a specific amount to be determined at trial, including compensatory damages, punitive damages, attorney's fees, court costs and expenses, all other damages recoverable under Federal or Illinois law, and any other relief that the Court deems just as proper.

## COUNT III
## MONELL CLAIM AGAINST DEFENDANT RANKIN
*Official Deficient Mental Health Policy Promulgated by Defendant RANKIN Was the Moving Force Behind the Constitutional Injury*

83.     Plaintiffs incorporate by reference and reallege ¶¶ 1 through 82, above, as if fully set forth herein.

84.     The provisions of the Defendant RANKIN's policy concerning suicide prevention and mental health care are found in Policy No. 211, the relevant segments of which are reprinted below (emphasis added).

> *All inmates entering the Coles County Jail* (who will not be immediately bonding) *will be screened, by the booking officer, for obvious mental conditions/attitudes that may endanger the inmate or others.*  The process will begin with filling out the Medical Screening Form.

> For inmates answering "yes" to the question "are you thinking about suicide" or *if the inmate indicates that he/she has made a suicide attempt within the last year, a "Suicide Prevention Screening Form" shall be completed.  Inmates that have five or more "yes" responses on the "Suicide Prevention Screening Form" shall be considered "at risk."*  The "at risk" designation necessitates further screening by the officer to determine the proper recommendations for cell assignment and/or mental health care….

> Inmates that indicate that they are thinking about killing themselves and/or have a suicide plan shall be placed in a counsel booth and evaluated by the Coles County Mental Health Department within a *reasonable amount of time*….

> *The Coles County Mental Health Department shall be contacted to examine an inmate that, in the opinion of the Coles County Corrections Staff, requires mental health assistance.*  Any inmate who requests mental health counseling shall also be referred to the Coles County Mental Health Department….

> The Coles County Mental Health Department worker on-call shall be contacted whenever an inmate is in need of emergency mental health counseling. *Discretion should be used to avoid unnecessarily calling* out the mental health staff with references that can be handled during normal business hours.

85.     Policy No. 211, above-referenced, is the official policy promulgated by Defendant RANKIN related to medical care of individuals in the custody of Defendant RANKIN.

86.     Policy No. 211 is grossly deficient and inherently flawed in providing the necessary protection and medical attention to individuals in the custody of Defendant RANKIN in one or more of the following ways:

a.  Policy No. 211 fails to address the necessary training Defendant RANKIN's staff should complete to be in a position to discern which individuals in the custody of Defendant RANKIN require mental health services.

b.  Policy No. 211 fails to address the necessary training Defendant RANKIN's staff should complete to be in a position to discern the level of threat that individuals in the custody of the Defendant RANKIN presented to themselves or others.

c.  Policy No. 211 fails to address the necessary training Defendant RANKIN's staff should complete to be in a position to discern when individuals in the custody of Defendant RANKIN require immediate and/or emergency mental health care.

d.  Policy No. 211 fails to address the necessary training Defendant RANKIN's staff should complete to be in a position to distinguish between individuals in the custody of Defendant RANKIN who require immediate and/or emergency mental health care and those who do not.

e.  Policy No. 211 fails to provide any written procedure or guidance to Defendant RANKIN's staff on how to manage and/or care for individuals in the custody of Defendant RANKIN who experience heightened mental health issues, beyond instructing said staff to *place at risk individuals in a counsel booth to be evaluated by the Coles County Mental Health department within a reasonable amount of time.*

f.  Policy No. 211 fails to provide any written procedure or guidance to Defendant RANKIN's staff as to any follow up procedures or reassessment process to be

utilized by such personnel to keep track of positive or negative developments of the mental health of inmates experiencing suicidal issues.

g. Policy No. 211 fails to provide any written procedure or guidance to Defendant RANKIN's staff as to any sort of different levels of care or observation individuals in the Custody of Defendant RANKIN who are experiencing mental health issues should receive commensurate with their level of suicide risk.

h. Policy No. 211 fails to provide any written procedure or guidance to Defendant RANKIN's staff as to when or how often individuals in the Custody of Defendant RANKIN who are experiencing mental health issues should be evaluated and/or reevaluated by an adequately trained and competent mental health medical professional.

i. Policy No. 211 fails to provide any written procedure or guidance to Defendant RANKIN's staff as to who is authorized to upgrade or downgrade and discharge an inmate from suicide prevention watch and/or treatment.

j. Policy No. 211 fails to provide any written procedure or guidance to Defendant RANKIN's staff as to the care of individuals in the Custody of Defendant RANKIN who are experiencing mental health issues while said individuals are in the custody of Defendant RANKIN but not at the Coles County Jail.

k. Policy No. 211 fails to provide any written procedure or guidance to Defendant RANKIN's staff as to the proper emergency response to a suicide attempt inside or outside the Coles County Jail.

l.  Policy No. 211 fails to provide any written procedure or guidance to the Defendant RANKIN's staff as to the review and assessment process following an inmate's suicide to enable Defendant RANKIN's staff to be in a position to learn from such event and prevent similar suicides in the future.

m.  Policy No. 211 inadequately burdens untrained staff with the task of providing care that Defendant RANKIN's has not adequately trained them to provide, thus putting at risk individuals who require care from properly trained staff.

87.  The aforesaid policy was grossly deficient and, taken with the prior acts known to Defendant RANKIN, was the moving force behind Mr. Brigham's constitutional injury (See allegations in ¶72 above).

WHEREFORE, pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against the Defendants, and award Plaintiffs an amount of damages in excess of Fifty-Thousand ($50,000.00) dollars, a specific amount to be determined at trial, including compensatory damages, punitive damages, attorney's fees, court costs and expenses, all other damages recoverable under Federal or Illinois law, and any other relief that the Court deems just as proper.

## COUNT IV
## MONELL CLAIM AGAINST DEFENDANT RANKIN
*Official Deficient Transportation and Custodial Policy Promulgated by the Defendant RANKIN Was the Moving Force Behind the Constitutional Injury*

88.  Plaintiffs incorporate by reference and reallege ¶¶ 1 through 87, above, as if fully set forth herein.

89.     The provisions of Defendant RANKIN's policy concerning transportation and custodial care of pretrial detainees and inmates while at the Coles County Courthouse are found in Policy No. 221.

90.     Policy No. 221 is the official policy promulgated by Defendant RANKIN related to the transportation and custodial care of individuals in the custody of Defendant RANKIN while at the Coles County Courthouse.

91.     Policy No. 221 is grossly deficient and inherently flawed in providing the necessary protection or reasonable measures to guarantee the safety of pretrial detainees or inmates in the custody of Defendant RANKIN while at the Coles County Courthouse.

92.     Defendants knew that Policy No. 221 concerning the transportation of at-risk inmates within the Coles County Courthouse is ineffective in protecting individuals at risk of committing suicide or providing reasonable measures to guarantee such individuals safety while at the Coles County Courthouse.  Specifically, Defendant RANKIN knew that in at least two prior occasions individuals under its custody had jumped or attempted to jump from the upper levels of the Coles County Courthouse with the intention of committing suicide.

93.     The grossly deficient policy of Defendant RANKIN related to the transportation and custodial care of individuals in the custody of Defendant RANKIN while at the Coles County Courthouse was the moving force behind Mr. Brigham's constitutional injury.

WHEREFORE, pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, Plaintiffs respectfully request that this Honorable Court enter a judgment in their favor and against the Defendants, and award Plaintiffs an amount of damages in excess of Fifty-Thousand ($50,000.00) dollars, a specific amount to be determined at trial,

including compensatory damages, punitive damages, attorney's fees, court costs and expenses, all other damages recoverable under Federal or Illinois law, and any other relief that the Court deems just as proper.

### COUNT V

**WRONGFUL DEATH**
*State Law Claim Pursuant to 740 ILCS 180/1*

94.     Plaintiffs incorporate by reference and reallege ¶¶ 1 through 93, above, as if fully set forth herein.

95.     As a direct and proximate result of the Defendants' wrongful and negligent acts or omissions, Mr. Brigham suffered extensive injuries that caused him excruciating pain and led to his death.

96.     As a direct and proximate result of the Defendants' wrongful and negligent acts or omissions, James Brigham died on January 24, 2019 as a result of the extensive injuries he incurred on January 22, 2019.

97.     Mr. Brigham is survived by his spouse, Plaintiff Kimberly Brigham, and his children, who lost and will forever be impacted by the loss of pecuniary, emotional, and moral support provided by Mr. Brigham, as well as the loss of his companionship, society and consortium.

98.     As a direct and proximate result of the Defendants' wrongful and negligent acts or omissions that caused Mr. Brigham's death, Plaintiff Kimberly Brigham experienced and continues to experience debilitating grief, sorrow, and mental suffering over the traumatic event that led to the death of her husband and the loss of his companionship.

WHEREFORE, Plaintiff, KIMBERLY BRIGHAM, individually and as Executor of the Estate of JAMES BRIGHAM, deceased, respectfully request that this Honorable Court enter a judgment in her favor and against the Defendants, and award Plaintiffs an amount of damages in excess of Fifty-Thousand ($50,000.00) dollars, a specific amount to be determined at trial, including compensatory damages, attorney's fees, court costs and expenses, all other damages recoverable under Illinois law, and any other relief that the Court deems just as proper.

## COUNT VI
## SURVIVAL
### State Law Claim Pursuant to 755 ILCS 5/27-6

99.      Plaintiffs incorporate by reference and reallege ¶¶ 1 through 98, above, as if fully set forth herein.

100.      As a direct and proximate result of one or more of the foregoing careless and negligent acts or omissions, Mr. Brigham experienced conscious pain and suffering before his death.

101.      This action is brought pursuant to 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, KIMBERLY BRIGHAM, individually and as Executor of the Estate of JAMES BRIGHAM, deceased, respectfully request that this Honorable Court enter a judgment in her favor and against the Defendants, and award Plaintiffs an amount of damages in excess of Fifty-Thousand ($50,000.00) dollars, a specific amount to be determined at trial, including compensatory damages, attorney's fees, court costs and expenses, all other damages recoverable under Illinois law, and any other relief that the Court deems just as proper.

## COUNT VII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*State Law Claim*

102.     Plaintiff KIMBERLY BRIGHAM incorporates by reference and realleges ¶¶ 1
through 101, above, as if fully set forth herein.

103.     Defendants, individually and jointly, engaged in extreme and outrageous conduct
as set forth in this Complaint, inter alia, by refusing and failing to adequately care for and
observe Mr. Brigham, failing to provide and respond to Mr. Brigham significant medical needs,
and being indifferent to his suffering.

104.     Defendants Rankin and the remaining Defendants engaged in extreme and
outrageous conduct as set forth in this Complaint, inter alia, by refusing to amend or in any way
address the Defendant RANKIN policies at issue in this matter, when they knew these policies to
be deficient and ineffective in protecting the lives of individuals under their custody, by failing to
obtain mental health treatment for Mr. Brigham, and by failing to safeguard him from the Fall.

105.     As a direct and proximate result of Defendants' wrongful and negligent acts or
omissions that caused Mr. Brigham's death, Plaintiff Kimberly Brigham experienced and
continues to experience debilitating grief, sorrow, and mental suffering over the traumatic event
that led to the death of her husband and the loss of his companionship.

          WHEREFORE, Plaintiff, KIMBERLY BRIGHAM, individually and as Executor
of the Estate of JAMES BRIGHAM, deceased, respectfully requests that this Honorable Court
enter a judgment in her favor and against the Defendants, and award Plaintiffs an amount of
damages in excess of Fifty-Thousand ($50,000.00) dollars, a specific amount to be determined at

trial, including compensatory damages, attorney's fees, court costs and expenses, all other damages recoverable under Illinois law, and any other relief that the Court deems just as proper.

## COUNT VIII
## (INDEMNIFICATION CLAIM PURSUANT TO 745 ILCS 10/9/102)
### *State Law Claim*

106.    Plaintiff KIMBERLY BRIGHAM incorporates by reference and realleges ¶¶ 1 through 105, above, as if fully set forth herein.

107.    The acts of the Defendant-Officers described in the above claims were willful and wanton, and committed while in the scope of employment.

108.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant COLES COUNTY, ILLINOIS is liable for any judgments in this case arising from the Defendant-Officers' actions.

WHEREFORE, Plaintiff, KIMBERLY BRIGHAM, individually and as Executor of the Estate of JAMES BRIGHAM, deceased, respectfully requests that this Honorable Court order Defendant COLES COUNTY, ILLINOIS to indemnify the Defendant-Officers named herein above for any judgment entered in this case arising from their actions.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

28

Dated this 9th day of September, 2019

Respectfully submitted,

KIMBERLY BRIGHAM, individually and as
independent administrator of the Estate of James B.
Brigham, Plaintiff


By: /s/ Chad S. Beckett
CHAD S. BECKETT, Counsel for Plaintiff


**CHAD S. BECKETT (ARDC #6255615)**
E-mail: chad@beckettlawpc.com
**ANDREW W. B. BEQUETTE (ARDC #6274557)**
E-mail: andrew@beckettlawpc.com
**JUAN C. BERNAL (ARDC #6329448)**
E-mail: juan@beckettlawpc.com
**BECKETT LAW OFFICE, P.C.**
508 South Broadway
Urbana, IL 61801
(217) 328-0263
(217) 328-0290 FAX