E-FILED
Monday, 11 November, 2019  04:40:07 PM
Clerk, U.S. District Court, ILCD

10452-85
BMS/BJV/tlp

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| KIMBERLY BRIGHAM, Individually and as Independent Administrator of the Estate of JAMES B. BRIGHAM, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 19-cv-01300-CSB-EIL |
| COLES COUNTY, ILLINOIS, JIMMY RANKIN, COLES COUNTY DEPUTIES WILLIAM BILBREY, SAMUEL A. JACKSON, & DEPUTY JOHN DOE (ID# 288), | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION TO DISMISS

NOW COMES the Defendants, COLES COUNTY, ILLINOIS, JIMMY RANKIN, WILLIAM BILBREY and SAMUEL A. JACKSON by HEYL, ROYSTER, VOELKER & ALLEN, and in support of their Motion to Dismiss, state as follows:

### I.      INTRODUCTION

1.      On January 22, 2018, a pre-trial detainee named James Brigham slipped past the correctional officer escorting him out a second-floor courtroom in the Coles County Courthouse, then ran up to and dove over the second-floor railing in the Courthouse's rotunda, falling to the first floor. Mr. Brigham's leap caused him injuries which ultimately resulted in his death.

2.      On September 9, 2019, Plaintiff Kimberly Brigham filed the instant Complaint. (d/e #1).

3.     In her Complaint, Plaintiff asserts the following claims:

a.  **Count I (Sec. 1983; Deliberate Indifference to a Serious Medical Need; All Defendants)**: That Mr. Brigham was suicidal, and therefore suffered a mental illness that all Defendants were deliberately indifferent towards.

b.  **Count II (Sec. 1983; Unsafe Conditions of Confinement; All Defendants):** That all Defendants knew that the "facilities at the Coles County Courthouse were dangerous and prone to suicide attempts," and "the policies a tissue in this matter" did not adequately guarantee the safety of Mr. Brigham.

c.  **Counts III and IV (Sec. 1983; *Monell*; Sheriff Rankin):** That a specific Coles County Sheriff's Office policy for addressing a detainee's mental health issues and transportation security was deficient, and therefore the moving force behind Mr. Brigham's death.

d.  **Counts V and VI (Wrongful Death/Survival Act; Negligence; All Defendants):** That all Defendant's breached a duty (adequate screening at intake; supervision while exiting the courthouse), resulting in Mr. Brigham's suicide.

e.  **Count VII (Wrongful Death/Survival Act; Negligent Infliction of Emotional Distress; All Defendants):** That the Defendants refused or failed to provide adequate care or supervision for Mr. Brigham, constituting "extreme and outrageous conduct."

f.  **Count VIII (State-law Indemnification; Coles County, Illinois):** That Coles County is liable for any damages resulting from the individual defendant's actions under 745 ILCS 10/9-102.

4.      For the reasons described below, portions of Plaintiff's Complaint should be dismissed or stricken.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a Motion to Dismiss for failing to state a claim for which relief can be granted. To state such a claim, Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555.

In determining whether the plaintiff's complaint survives a motion to dismiss, the court must employ a two-step process. First, a court must identify the "allegations in the complaint that are not entitled to the assumption of truth." *Iqbal,* 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Conclusory allegations are "not entitled to be assumed true" and cannot be considered for purposes of determining whether the complaint states a claim for relief. *Id.* at 1951. Once the court determines those allegations which can be considered, it must then determine whether such allegations "state[] a plausible claim for relief..." *Id.* at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-'that the pleader is entitled to relief.'" *Id.* (quoting FRCP 8(a)(2)). Accordingly, "[i]n the interest of justice and economy, every effort should be made by the district court from the start of a case to determine its likely merit and guide it to a swift conclusion as is

consistent with doing justice to the parties." *Milam v. Dominick's Finer Foods, Inc.*, 588 F.3d 955, 959 (7th Cir. 2009).

## III.    ARGUMENT

### A. Count II (§ 1983; Conditions of Confinement): A courthouse stairway is not the sort of "condition" that can be subject to a "conditions of confinement" claim.

Plaintiff alleges that all Defendants were exhibited "deliberate indifference" to Mr. Brigham's safety when they allegedly knew "the facilities at the Coles County Courthouse were dangerous and prone to suicide attempts." (d/e #1, ¶80). The only specified "facilit[y]" of the Courthouse that Plaintiff mentions is the second-floor railing outside a courtroom, which overlooks the Courthouse's rotunda. (d/e #1, ¶56).

Briefly stated, Plaintiff appears to be attempting to convert a "medical needs" claim into a constitutionalized premises-liability claim. Counsel has not found a basis for such a theory. *See, e.g.*, *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1986) (observing, in Eighth Amendment context, that the constitution was not violated for failure to adhere to OSHA regulations or state fire codes). Therefore, Plaintiff's Count II should be dismissed; or, alternatively, Defendants are entitled to qualified immunity.

### 1.  *A courthouse railing, on its own, is not an unconstitutionally hazardous condition*

The Seventh Circuit recently concluded that all Fourteenth Amendment "conditions of confinement" claims are to be evaluated under the *Miranda v. County of Lake* standard for "objective reasonableness." *Hardeman v. Curran*, 933 F.3d 816, 822-23 (7th Cir. Aug. 12, 2019) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335 (7th Cir. 2018)). Under this standard, a defendant may be liable for a "condition of confinement" when: (1) the condition in question was objectively serious; (2) the defendant acted "purposefully, knowingly, or recklessly" with respect to the

consequences of his or her actions; and (3) the defendant's actions were objectively-unreasonable due to being "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *Id.* at 827 (Sykes, J., concurring) (quoting *Kingsley* 135 S. Ct. 2466, 2473-74 (2015)).

Plaintiff's Complaint errors at the initial step of the inquiry: Plaintiff has not alleged a constitutionally significant condition of confinement. (This prong of the inquiry is the same regardless of whether a claim is brought under the Fourteenth or Eighth Amendment, and therefore cases under either amendment are relevant.)

First, the railing is part of government building that is open to the public, and thus not a "condition of confinement." As *Hardeman* notes, "conditions of confinement" claims generally involve the "denial of life's basic necessities, such as adequate food, clothing, shelter, and medical care." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff's allegations in Count II speak to none of these issues, which are all ultimately aimed at ensuring a detainee has "the minimal civilized measure of life's necessities," *Id.* at 821. Instead, Plaintiff alleges that a railing exists (apparently without any quality defects) on the second floor of a courthouse, overlooking a rotunda. This courthouse railing—unlike a prison, jail, or holding cell—is in a portion of the courthouse that is open to the public. Stated differently, one does not even need to be "confined" to use the railing in question.

Furthermore, counsel has not found any authority suggesting a railing or other portion of a courthouse open to the public is a constitutionally significant "condition of confinement." The only case counsel could find that involved a "condition" in a courthouse involved a *detention cell* at a courthouse, presumably in an area closed-off to the public. *Partee v. Cook County Sheriff's Dep't.*, 863 F. Supp. 778, 781 (N.D. Ill. 1994) (affirming dismissal under Eight-Amendment standard;

insufficient allegation of an unconstitutional condition of confinement where detainee was locked up in a Courthouse holding cell for "several hours" without access to cold water or toilet paper).

Second, there is nothing allegedly dangerous about the railing in question. The Plaintiff does not allege the railing is two inches off the ground (and therefore functionally useless), that the middle of the railing was broken, or that the railing was otherwise deficient in its ability to function as a railing. Instead, Plaintiff alleges that when Mr. Brigham and two other individuals were determined enough to commit suicide by jumping to their demise, they were able to do so. (d/e #1, ¶¶ 56, 81).

By analogy, the stairs in a prison are not an unconstitutionally-dangerous "condition of confinement" simply because they exist and an individual could theoretically throw themselves down them to cause injury — indeed, prison stairs are not a dangerous condition even when they are wet/slippery. *See Pyles v. Fahim*, 771 F.3d 403, 410-11 (7th Cir. 2014). Instead, stairs become an unconstitutionally dangerous "condition of confinement" if they are wet/slippery, *and* littered with trash and other easily-removed obstacles, *and* the inmate walking down them has handcuffs behind his back (limiting his balance). *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir, 2016). Plaintiff's Complaint lacks any allegations establishing such a danger. Her Complaint's "stairs" are not even slippery/wet—they are only "stairs."

All of the above underscores how Plaintiff's concern about the Courthouse's railing does not fit a "condition of confinement" claim. If the focus is instead on the *mental health issue* that prompted Mr. Brigham to commit suicide, then Plaintiff can (and does) allege a "medical needs" claim. *See* (d/e #1, Count I). If Plaintiff instead believes there was error with the Sheriff's policies regarding how Mr. Brigham was supervised, then Plaintiff can (and does) allege a *Monell* claim. (Counts III, IV). But Plaintiff's constitutional claim relating to the railing itself must be dismissed.

### 2. *In the alternative, Defendants are entitled to qualified immunity*

Qualified immunity protects "public servants from liability for reasonable mistakes made while performing their public duties." *Filay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). If this Court concludes the Defendants subjected Mr. Brigham's right to not be in proximity to the subject courthouse railing, qualified immunity will block liability if this constitutional right was not "clearly established" such that it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that write". *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). Stated differently, there need not be an identical case as Mr. Brigham's that preceded his demise, but the courts cannot define "clearly established law at a high level of generality". *Id.*

Assuming *arguendo* that Plaintiff's allegations plausibly plead that Defendants violated Mr. Brigham's rights, Defendants are entitled to qualified immunity. As best counsel can tell, there is no case within the Seventh Circuit establishing that a detainee is subject to an unconstitutionally hazardous "condition of confinement" simply by being near a second floor railing in a public building. Indeed, as best counsel can tell, the case law suggests the opposite. (*See* Part III.A(1), *supra*). Qualified immunity is therefore warranted.

**B. Counts V (Wrongful Death), VI (Survival Act), and VII ("NIED"): Defendants cannot be liable in state law for the act of an "escaping" detainee/prisoner, and Plaintiff alleges the improper mental state.**

Plaintiff's three substantive state-law claims must be dismissed with prejudice, as Illinois law immunizes local governmental employees for injuries resulting from an "escaping" detainee. In the alternative, these counts must be dismissed because they fail to allege the necessary mental state.

Preliminarily, Plaintiff alleges that all Defendants are municipal employees or offices and acting within the scope of their employment. (d/e #1, ¶¶ 7–12). As such, the Defendants may avail themselves of Illinois' Local Governmental and Governmental Employee Tort Immunity Act. 740 ILCS 10/1-101 *et seq.* (hereinafter, "Tort Immunity Act").

### 1. The Tort Immunity Act immunizes Defendants for injuries caused by "escaping prisoners."

Counts V through VII are all predicated on Mr. Brigham's unfortunate death (d/e #1, ¶¶ 56–59,,94, 99, 102). According to the Complaint, Mr. Brigham died because, while being escorted out of a second-floor courtroom by Officer Bilbrey, Mr. Brigham left his escort, "pitched" himself over the second-floor railing, and fell to the floor below. (d/e #1, ¶56). Stated differently, Mr. Brigham fled Defendant Bilbrey's custody and jumped to his demise from the second floor.

Illinois' Tort Immunity Act states that "[n]either a local public entity nor a public employee is liable for . . . [a]ny injury inflicted by an escaped or escaping prisoner." 745 ILCS 10/4-106(b). The issue is whether Mr. Brigham was a "prisoner" and "escaping" for purposes of the immunity.

First, Mr. Brigham was a "prisoner." Under the Act, "prisoner" is defined as "a person held in custody." *Ries v. City of Chi.*, 242 Ill. 2d 205, 216 (2011) (citing Act). "Custody," for its part, is not defined by the Act; however, our Supreme Court has construed the term to go beyond formal imprisonment to include (at minimum) being placed in the back of a police squad car, because the individual's freedom of movement had been controlled or limited by lawful authority. *Id.* at 217 (applying 740 ILCS 10/4-106(b)). Here, the Complaint alleges Mr. Brigham was "under the custody" of the Coles County Sheriff as a consequence of Mr. Brigham's arrest and incarceration at the Coles County Jail. (d/e #1, ¶¶ 5, 19). Mr. Brigham was also being escorted by correctional

officers at the time he leapt to his death. (d/e #1, ¶¶ 55–56). Mr. Brigham was therefore "in custody" and thus a "prisoner" for purposes of the Section 4-106(b).

Second, Mr. Brigham was "escaping" at the time he leapt to his death. "Escaping" for purposes of Section 4-106(b) has, to counsel's knowledge, not been clearly defined by either the Act or the case law. Perhaps because such a definition is unnecessary: if "custody" means an individual's "freedom of movement has been directly controlled and limited" by the lawful act of an officer,[1] then "escape" must require an attempt to leave the "custody" (i.e., restrictions/control) of the officer. Thus, driving away from a traffic stop is "escaping." *Townsend v. Anderson*, 2019 IL App (1st) 180771, ¶¶ 18, 34 (1st Dist. July 25, 2019); *see also Ries*, 242 Ill. 2d 205.   Illinois' crime of "escape" also tracks this logic. 720 ILCS 5/31-6(a),(b) (person commits offense of "escape" when he escapes from the custody of a penal institution employee); *People v. Howell*, 388 Ill. App. 3d 338, 340–44 (4th Dist. 2009) (defendant committed offense of "escape" while being escorted from a sixth-floor courtroom because defendant broke away from a court security guard and ran down the stairs before being apprehended by other guards at the third floor). If an individual commits the *crime* of "escaping" by simply running down a few flights of stairs in a courthouse, then jumping from the second to the first floor of a courthouse should be an "escape" for purposes of a civil immunity *a fortiori*.

Finally, the plain language of Section 4-106(b) immunizes the Defendants for "*any* injury inflicted" by an escaped prisoner. "Any" means "any": Section 4-106(b) is one of the Tort Immunity Act's sections that "clearly provide[s] blanket immunity for all conduct by immunizing liability for any injury, without exception." *Doe -3 v. McLean Cnty. Unit Dist. No. 5*, 2012 IL 112479, ¶69 (listing

---

[1] *Townsend v. Anderson*, 2019 IL App (1st) 180771, ¶32 (1st Dist. July 25, 2019) (citing *Ries*, 242 Ill. 2d at 217).

Section 4-106(b) among blanket immunities). Thus, the plain language of the statute immunizes Defendants for the suffering Mr. Brigham caused himself and Plaintiff when he escaped custody. Moreover, the fact an escaping prisoner left "custody" due to some error by a municipal defendant does not defeat the immunity — such an argument would render Section 4-106(b) "a nullity" as "[a]nytime a prisoner escapes from custody, a plaintiff would likely be able to point to some failure by those responsible for keeping the prisoner in custody." *Ries*, 242 Ill. 2d at 219.

In sum, Plaintiff's Complaint pleads her into a blanket immunity: Mr. Brigham was an "escaping prisoner" under Section 4-106(b) of the Tort Immunity Act, and therefore Plaintiff's state-law claims must be dismissed.

### 2.  *Plaintiff has not alleged the required "willful and wanton" mental state.*

If this Court concludes Defendants are not absolutely immunized under 740 ILCS 10/4-106(b), then Plaintiff's Counts V, VI, and VII still must be dismissed for failure to plead a "willful and wanton" mental state.

None of the allegations in Counts V, VI, or VII themselves (or incorporated by reference thereto) allege a mental state higher than "negligence." However, a number of provisions in the Tort Immunity Act govern Plaintiff's apparent state-law theories — all require an elevated mental state of "willful and wanton" misconduct. 740 ILCS 10/2-202 ("Execution or enforcement of law"); *id*. § 4-105 ("Failure to furnish medical care for prisoner"). Thus, whether Plaintiff's state-law theories are predicated on an alleged failure to maintain custody of Mr. Brigham before he jumped to his death, or some alleged failure to provide medical treatment, Plaintiff must alleged a "willful and wanton" mental state. The current Complaint neglects to do so, and should be dismissed.

### C. Counts I and II (§ 1983): Plaintiff's Complaint appears to allege that Sheriff Rankin is liable for the conduct of his agents/*respondeat superior*.

There is no *respondeat superior* liability under Section 1983; each defendant must be directly involved in a given constitutional violation. *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014).

Here, Count I repeatedly alleges that "agents" of Sheriff Rankin did or did not do a certain act, and then concludes Sheriff Rankin (as part of the unspecified "Defendants") is liable under Count I. (d/e #1, ¶¶ 17, 20, 24, 27, 28, 30, 39, 59, 66, 67); *Id.* at p.18. There is no allegation that Sheriff Rankin himself specifically did any relevant act in Count I or II, which are not *Monell* claims. These allegations for Counts I and II can therefore only attempt to hold Sheriff Rankin liable in his capacity as a supervisor, which makes him an improper defendant for these Counts.

Granted, there are a few outlier allegations in Plaintiff's Complaint, but none of these evince a sincere attempt to hold Sheriff Rankin individually liable in Counts I and II.

To start, there are a number of general allegations that "Defendants" (unspecified) were aware of Mr. Brigham's risk of suicide yet purportedly failed to take some action, (d/e #1, ¶¶ 29–30, 33, 75–77, 80–82). However, these are conclusory "group pleadings" that are insufficient to put Sheriff Rankin on notice of any act he individually did or did not take. *See, e.g.*, *Harrison v. Ill. DOT*, 2011 U.S. Dist. LEXIS 661145, 20 (N.D. Ill. 2011) (noting a lack of requisite personal involvement in a § 1983 complaint when plaintiff's complaint "lumps each of the individual defendants together without regard to their respective roles, if any" in the alleged constitutional violation). Coles County, for example, would be considered part of the "defendants" for these allegations as plead, and yet no Coles County employee is specifically referenced in the Complaint, and Mr. Brigham is not alleged to have been anywhere he would have interacted with one.

Finally, Paragraph 59 alleges that "Defendant RANKIN" failed to provide decedent with medical treatment despite knowing decedent posed a suicide risk. This allegation is unconnected to a supporting allegation establishing why/how Rankin personally knew or had any reason to know of Mr. Brigham's condition. Indeed, subsequent allegations suggest Plaintiff did not intend to allege any type of individual involvement in Mr. Brigham's demise aside from as a *Monell* defendant. (d/e #1, ¶ 67) (alleging injury would not have occurred "but for" conduct of Bilbrey, Jackson, Doe, and "other agents", but not listing Rankin as a "but for" cause force); *Id.* at ¶¶ 68–72 (alleging Rankin established deficient policies, causing injury). Thus, Paragraph 59 is a conclusory allegation that an individual "knew something despite notice" without any connecting causation allegation against Rankin's individual conduct (as compared to in his capacity as a policy writer). All other allegations against Rankin suggest that he did nothing other than employ other named defendants, and write policies.

Therefore, Sheriff Rankin should be dismissed from Counts I and II for lack of personal involvement, as he cannot be held constitutionally liable under *respondeat superior* under Section 1983. *Ball*, 760 F.3d at 643.

### D. Punitive damages cannot be sought under a *Monell* theory, and should be struck from Counts III and IV.

In Counts III and IV, Plaintiff seeks punitive damages against Sheriff Rankin/the Coles County Sheriff's Office due to alleged *Monell* liability. (d/e #1, p.23, 25). Punitive damages cannot be sought against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258–71 (1981); *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009). Therefore, Plaintiff's prayer for punitive damages must be stricken from Counts III and IV.

**E. Coles County should be dismissed from Counts I, II, V, VI, and VII, because the County is only a proper defendant in this action for indemnification purposes.**

Plaintiff's Complaint alleges that Defendant Coles County is in this action "pursuant to *Carver v. Sheriff of LaSalle County* [. . .] and *also* as a result of its failure to correct dangerous conditions at the Coles County Courthouse . . . .". (d/e #1, ¶ 8).

Defendant acknowledges that Coles County is a proper party-defendant for purposes of ensuring any judgment entered against the Coles County Sheriff's Office. *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

However, Coles County cannot be liable in its own capacity for any alleged "failure to correct dangerous conditions at the Coles County Courthouse". (d/e #1, ¶ 8). Under Illinois law, Coles County is not responsible for maintaining the subject courthouse — the Coles County Sheriff's Office and its employees are. 55 ILCS 5/3-6017; *see e.g.*, *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 860–61 (N.D. Ill. 2010). This also means that, contrary to Plaintiff's Complaint, Coles County is not the "principal" of Defendant Sheriff Rankin. (d/e #1, ¶ 7). Instead, Sheriff Rankin represents a constitutionally-distinct entity called the Coles County Sheriff's Office, *Moy v. County of Cook*, 159 Ill. 2d 519, 524–525 (1994), which is included in this suit already through Plaintiff's claims against Sheriff Rankin in his official capacity. *See, e.g.*, *Jacobo v. Will Cnty. Sheriff's Office*, 2011 U.S. Dist. LEXIS 11410, at *14 (N.D. Ill. 2011) (citing *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011)).

Consequently, the following portions of Plaintiff's Complaint should be dismissed or stricken:

1. Coles County should be dismissed from Counts I, II, V, VI, and VII, which each assert direct liability against "all defendants" or "Defendants" without excluding Coles County. (d/e #1: Count I, ¶¶ 75–76; Count II, ¶ 80–82; Count V, ¶¶ 95–96; Count VI, ¶¶ 95–96; Count VII, ¶¶ 103–105).

2. This Court should strike the allegations that Sheriff Rankin or any of his office's deputies are an "agent" or "employee" for Coles County, or somehow act on behalf of Coles County. (d/e #1, ¶¶ 7, 9, 10, 11).

3. This Court should strike the allegation that Coles County "operates the Coles County Jail and Coles County Courthouse". (d/e #1, ¶ 12).

**F. Plaintiff does not have a private cause of action under the Illinois Constitution, and any such claims should be dismissed.**

Any claims Plaintiff brings under the Illinois constitution should be dismissed; or, if no such claims are brought, then references to the Illinois constitution should be stricken. FRCP 12(f).

Plaintiff's Complaint purports to state claims under various portions of the Illinois constitution (d/e #1, ¶2), before ultimately appearing to specify her belief that Counts I and II are brought under the Illinois constitution's "due process"/"equal protection" clause in addition to Section 1983. *Id.* at ¶ 74, 78. These allegations are then incorporated by reference into all of Plaintiff's various counts, but none of the prayers for relief allude to Illinois' constitution.

Plaintiff's issue is that there is no recognized private right of action under the Illinois constitution — at least, that counsel can identify. *See, e.g.*, *Shelvin v. Rauner*, 2019 U.S. Dist. LEXIS 33054, at *3–4 (N.D. Ill. Mar. 1, 2019) (collecting cases). Moreover, Illinois' constitution is interpreted using a "limited lockstep" model, where provisions that are phrased identically to provisions of the federal constitution are generally imbued with the same meaning/interpretations as the federal constitution. *See generally*, *People v. Caballes*, 221 Ill. 2d 282 (2006) (providing history of Illinois' "limited lockstep" approach). The due process/equal protection clauses Plaintiff cites from the federal and Illinois constitutions are, in relevant part, phrased identically, and thus would be treated alike under either Illinois or federal law. "Where state common law or federal law provides an adequate remedy to a plaintiff . . . a plaintiff may not maintain an independent

cause of action under the Illinois Constitution." *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 847, 862–863 (N.D. Ill. 2010) (collecting cases).

As a result, any claims Plaintiff is asserting under Illinois law should be dismissed with prejudice under Rule 12(b)(6), and any portion of Plaintiff's Complaint referring to the Illinois Constitution stricken under Rule 12(f).

## IV.     CONCLUSION

For the reasons stated above, the aforementioned portions of Plaintiff's Complaint should be dismissed.

Respectfully submitted,

COLES COUNTY, ILLINOIS, JIMMY RANKIN, WILLIAM BILBREY and SAMUEL A. JACKSON, Defendants

BY: s/Bryan Vayr
Brian M. Smith
Bryan J. Vayr
HEYL, ROYSTER, VOELKER & ALLEN
Suite 505, 301 N. Neil Street
Champaign, IL 61820
Telephone  217.344.0060
Email: bsmith@heylroyster.com
Email:  bvayr@heylroyster.com

## **TYPE VOLUME CERTIFICATION**

Pursuant to Local Rules 7.1(B)(4), Counsel certifies that this Motion includes 15 double-spaced pages (in addition to this page of Certification and Service), and does not contain more than 7,000 words according to the word processing system used to prepare this Motion. The aforementioned portions contains approximately 4,450 words.

Respectfully submitted,

s/Bryan Vayr
Attorney for Defendants
Bryan J. Vayr, ARDC #: 6327729
HEYL, ROYSTER, VOELKER & ALLEN
Suite 505, 301 N. Neil Street
Champaign, IL 61820
Telephone  217.344.0060
Email:  bvayr@heylroyster.com

**PROOF OF SERVICE**

       I hereby certify that on November 11, 2019, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Chad S. Beckett
Andrew W. B. Bequette
Juan C. Bernal
Beckett Law Office, P.C.
508 S. Broadway
Urbana, IL 61801

       I also hereby certify that I have mailed, by United States Postal Service, the foregoing to the following non-CM/ECF participant: None.

s/Bryan Vayr
Heyl, Royster, Voelker & Allen

36908361_1