## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

|  |  |  |
|---|---|---|
| **KIMBERLY BRIGHAM,** | ) | |
| **Individually and as Independent** | ) | |
| **Administrator of the Estate of** | ) | |
| **JAMES B. BRIGHAM, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 19-cv-1300** |
| | ) | |
| **COLES COUNTY, ILLINOIS** | ) | |
| **JIMMY RANKIN COLES COUNTY** | ) | |
| **DEPUTIES WILLIAM BILBREY,** | ) | |
| **SAMUEL A. JACKSON, and** | ) | |
| **DEPUTY JOHN DOE (ID # 288),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss (d/e 11) filed by Defendants Coles County, Jimmy Rankin, William Bilbrey, and Samuel A. Jackson.  For the reasons stated below, the Motion to Dismiss is DENIED in part and GRANTED in part.

## I. INTRODUCTION

Defendants Coles County, Illinois, Jimmy Rankin, William Bilbrey, and Samuel A. Jackson filed the motion to dismiss that is now before this Court. <u>See</u> Motion, d/e 11. Defendants seek dismissal of Count II, arguing that the courthouse railing, on its own, is not an unconstitutionally hazardous condition, and, in the alternative, Defendants are entitled to qualified immunity. <u>Id.</u> at 4. Defendants also contend that they are entitled to dismissal on Plaintiff's state law claims for wrongful death, survival, and negligent infliction of emotional distress because the Tort Immunity Act provides immunity from liability for "escaping prisoners" and Plaintiff has not alleged the required mental state of willful and wanton. <u>Id.</u> at 7. Next, Defendants argue that Counts I and II appear to allege Defendant Sheriff Rankin is liable for the conduct of his agents pursuant to respondent superior, which is not a theory of recovery under § 1983. <u>Id.</u> at 11. Defendants also request the Court strike Plaintiff's request for punitive damages and dismiss Coles County, arguing that the County is only a proper defendant for indemnification purposes. <u>Id.</u> at 12-13. Lastly, Defendants request the Court dismiss any action brought pursuant to the Illinois Constitution as no private cause of action exists. <u>Id.</u> at 14.

## II. BACKGROUND

The following facts come from Plaintiff's Complaint.  The Court accepts them as true in ruling on Defendants' motion to dismiss. See Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

In October 2018, Plaintiff Kimberly Brigham knew her husband, James Brigham, was contemplating suicide as she found a suicide note from Mr. Brigham.  See Complaint, d/e 1, p. 5.  On December 28, 2018, Mr. Brigham expressed his intention to end his life, and he consumed a half-gallon of antifreeze.  Id.  Mrs. Brigham contacted the Mattoon Police Department to report Mr. Brigham's statements and for help in finding Mr. Brigham.  Id.  The Mattoon Police Department located Mr. Brigham and took him to obtain medical treatment, ultimately leading Mr. Brigham to Carle Foundation Hospital.  Id. at 5-6.

The next day, on November 29, 2018, Mr. Brigham was released from Carle Foundation Hospital, and Mr. Brigham was arrested by the Urbana Police Department.  Id. at 6.  He was then transferred to Coles County Jail.  Id.  Defendant Samuel A. Jackson booked Mr. Brigham.  Id.  Coles County Jail had a policy, Policy No. 211, which instructed the booking officer to screen Mr. Brigham for

obvious mental health conditions or attitudes that could endanger Mr. Brigham or others by completing a Medical Screening Form. Id. Defendant Jackson did not screen Mr. Brigham for mental health concerns, did not complete the Medical Screening Form, failed to consult the Coles County Mental Health Department, failed to notify or seek immediate mental health services for Mr. Brigham, and failed to document Mr. Brigham's immediate need for mental health. Id. at 6-7. The same is true for Defendant John Doe (Officer ID No. 288). Id. at 7-8.

Defendant Jackson, Defendant Doe, Defendant Rankin, and other agents of Defendant Rankin were responsible for completing a Suicide Prevention Screening Form to determine proper recommendations for housing and mental health care for Mr. Brigham given the state of Mr. Brigham's mental health upon arrest. Id. at 9. Additionally, Mr. Brigham should have been placed in a counsel booth while Coles County Mental Health Department was contacted to conduct an examination of Mr. Brigham to determine necessary mental health treatment. Id. Defendant Jackson, Defendant Doe, and other agents of Defendant Rankin knew or should have known that Mr. Brigham presented a danger

to himself and others due to his mental health and recent suicide
attempts.  Id.

On January 22, 2019, Mr. Brigham had a dissolution court
hearing in Courtroom No. 3 in the Coles County Courthouse.  Id. at
10.  That morning, Defendant Jackson received a phone call while
at the Coles County Courthouse from a woman who expressed
concern that Mr. Brigham had expressed interest in killing himself
due to his pending proceeding.  Id. at 11.  Defendant Jackson did
not communicate this information to his supervisor or any other
agent of Defendant Rankin.  Id.  Also, Defendant Jackson did not
perform a suicide screening for the safety of Mr. Brigham and those
around him while he was at the Coles County Courthouse on the
afternoon of January 22.  Id.  Prior to January 22, 2019, Defendant
Rankin's staff had received notice that Mr. Brigham was
experiencing heightened levels of stress due to his pending hearing.
Id.

Pursuant to Policy No. 221 of the Coles County Sheriff's Office,
Defendant Rankin's staff was responsible for coordinating the
transportation of Mr. Brigham from the Coles County Jail to the
Coles County Courthouse in a safe and secure manner to protect

Mr. Brigham, the transporting officer, and the general public.  Id. at
12.  The policy also detailed that the transporting officer was to
escort Mr. Brigham to and from the courthouse via the security
tunnel, which connects the Coles County Jail and the Coles County
Courthouse, then immediately take him to the appropriate
courtroom or jury room via the rotunda stairway.  Id.  The
transporting officer was supposed to be no further than eight feet
away from Mr. Brigham and in constant visual contact with him.
Id.

On January 22, 2019, at approximately 3:20 p.m., Defendant
Bilbrey, a Coles County Jail correctional officer, transported Mr.
Brigham from the jail to the courthouse.  Id. at 13.  Once at the
courthouse, Defendant Bilbrey radioed court security to notify them
that he was bringing Mr. Brigham up the stairs to Courtroom No. 3,
which is located on the second floor of the courthouse.  Id.
Defendant Bilbrey walked Mr. Brigham around the courthouse, and
then took him to Courtroom No. 3.  Id.  After attempting to talk to
his wife, Mr. Brigham told Defendant Bilbrey that he felt ill.  Id.
Defendant Bilbrey escorted Mr. Brigham out of the courtroom to the
hallway by the courthouse rotunda but took him back once Mr.

Brigham's case was called.  Id.  The Court entered findings in support of a Judgment of Dissolution of Marriage.  Id. at 14. However, the Court did not enter a judgment order but requested Mrs. Brigham prepare a written order.  Id.  An order of dissolution was never entered, and the case was later dismissed with prejudice based upon a motion filed by Mrs. Brigham.  Id.

Mr. Brigham was visibly troubled during the hearing, and, at the end of the hearing, he told Mrs. Brigham that he would always love her.  Id.  Mrs. Brigham left the courtroom first.  Moments later, Defendant Bilbrey opened the doors leading from the courtroom to the hallway and scanned the hallway for the presence of others. Mr. Brigham exited the courtroom, moved to the edge of the walkway railing overlooking the rotunda, and pitched himself over the side of the railing.  Id.  He fell from the second floor onto the first-floor common area beneath the rotunda.  Id.  While Mr. Brigham was falling, Mrs. Brigham was walking through the first-floor common area and had to run out of the way to avoid Mr. Brigham landing on top of her.  Id. at 15.  At the time of Mr. Brigham's fall, Defendant Bilbrey lost visual contact of Mr. Brigham.  Id. at 14.

Mr. Brigham landed on the left side of his face and left-front side of his body, resulting in significant injuries, including fractures to his facial and cranial bones, fractures to his left and right ribs and pelvis, lacerations to his spleen, and severe emphysema to his lungs. Id. at 15. On January 24, 2019, two days after the fall, Mr. Brigham died. Id.

The night before the incident, Mr. Brigham told inmate Cody Carter his plans to hang himself in the jail or to jump off one of the balconies in the Coles County Courthouse. Id. at 10. Inmate Carter discussed Mr. Brigham's desire with other inmates and detainees at the Coles County Jail. Id. Between the time that Mr. Brigham was booked and when the incident occurred, Mr. Brigham did not receive any mental health treatment despite Defendants having knowledge of Mr. Brigham's mental health issues and suicide risk. Id.

Based on Mr. Brigham's statements to other inmates and the pending proceedings, Defendant Rankin's staff, including Defendant Bilbrey, knew or should have known that Mr. Brigham was contemplating committing suicide during his incarceration. Id. at 11. Defendant Rankin's staff failed to monitor Mr. Brigham's

behavioral patterns and attitudes to determine that he presented a danger to himself or others.  Id.  Additionally, Defendant Rankin had knowledge that Mr. Brigham was at risk of committing suicide but failed to provide Mr. Brigham with mental health treatment. Id. at 15.  Plaintiff alleges that the actions of Defendants and the inadequacy of the policies of Defendant Rankin led to the injuries and death of Mr. Brigham.  Id. at 16.

Defendant Rankin knew of one or more prior occasions where an individual in the Sheriff's custody had jumped or attempted to jump from the upper levels of Coles County Courthouse.  Id. at 16. Defendant Rankin was on notice of these incidents, but he did not modify his policies and procedures for inmate transportation to and from the courthouse.  Id.  Moreover, Defendant Coles County and the remaining Defendants failed to make improvements to the second floor of the Coles County Courthouse or the manner of inmate transportation to and from the courthouse despite having notice of prior similar incidents.  Id. at 16-17.

On September 9, 2019, Plaintiff, individually and as the independent administrator of the estate of Mr. Brigham, filed a Complaint (d/e 1) pursuant to 42 U.S.C. § 1983 and Illinois state

law against Defendant Coles County, Jimmy Rankin, William

Bilbrey, Samuel A. Jackson, and Deputy John Doe (ID No. 288).  In

Plaintiff's Complaint, she alleges eight counts:

- Count I – Fourteenth Amendment violation for deliberate indifference to Mr. Brigham's medical needs pursuant to 42 U.S.C. § 1983;
- Count II - Fourteenth Amendment violation for "Deliberate indifference to objectively serious unsafe conditions of confinement" pursuant to 42 U.S.C. § 1983;
- Count III – <u>Monell</u> claim against Defendant Ranking for deficient mental health policies pursuant to 42 U.S.C. § 1983;
- Count IV – Monell claim against Defendant Rankin for deficient transportation and custodial policies pursuant to 42 U.S.C. § 1983;
- Count V – state law claim for wrongful death pursuant to 740 ILCS 180/1;
- Count VI – state law claim for survival pursuant to 755 ILCS 5/27-6;
- Count VII – state law claim for negligent infliction of emotional distress; and
- Count VIII – state law claim for indemnification pursuant to 745 ILCS 10/9/102.

<u>See</u> d/e 1.

### III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the

complaint.  <u>Christensen v. Cty. Of Boone, Ill.</u>, 483 F.3d 454, 458

(7th Cir. 2007).  To survive dismissal, the complaint must contain

"a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2); <u>Tamayo</u>, 526 F.3d at

1081 ("A plaintiff's complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis.")(quoting Fed. R. Civ. P. 8(a)(2)). "Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (internal quotation omitted). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. Id. The court must draw all inferences in favor of the non-moving party. In re marchFIRST Inc., 589 F.3d 901, 904 (7th Cir. 2009).

## IV. ANALYSIS

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), making various arguments why the Complaint should be dismissed or, in the alternative, why parts thereof should be struck.

### A. Plaintiff sufficiently stated a failure to protect claim, and Defendants are not entitled to qualified immunity.

### 1. Count II.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived her of a federal right, privilege, or immunity. 42 U.S.C. § 1983; Brown v. Budz, 398 F.3d 904, 908 (7th Cir. 2005). State officials must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). For cases involving risk of harm to an inmate, a "deliberate indifference" standard is used. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Under this standard, a state official is liable only if he knows an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

Defendants argue that Plaintiff is attempting to convert a medical needs claim into a premises-liability claim and that the courthouse railing is not the type of "conditions of confinement" meant for a § 1983 claim.

In Plaintiff's Response, she argues that she sufficiently pled that "Defendants violated decedent's constitutional rights to

medical care and reasonable safety when they exposed the decedent and failed to protect him against the excessive risk that the Courthouse rotunda presented to the safety of suicidal detainees like himself." See d/e 14, p. 6.  Plaintiff's argument appears to mix different types of § 1983 claims.  However, the Seventh Circuit has "repeatedly [] recognized a jail or prison official's failure to protect an inmate from self-harm as one way of establishing deliberate indifference to a serious medical need."  Miranda, 900 F.3d at 349.

In Count I, Plaintiff alleges Defendants were deliberately indifferent to an objectively serious medical need of Mr. Brigham. See d/e 1, p. 17; see also Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018).  Plaintiff titled Count II as "deliberate indifference to objectively serious unsafe conditions of confinement."  Id. at 18.  In Count II, Plaintiff alleges that "Defendants were deliberately indifferent to Mr. Brigham's safety and failed to take reasonable measures to guarantee Mr. Brigham's safety."  Id.  Defendants did so by having knowledge that the Coles County Courthouse was dangerous and "prone to suicide attempts in the past similar to" Mr. Brigham's fall.  Id. at 19.

Plaintiff has alleged that placing Mr. Brigham near a suicidal hazard, knowing that Mr. Brigham was suicidal, placed Mr. Brigham in harm's way and failed to protect him. The Court must accept the facts as pled as true. At this stage, Plaintiff's burden is to put Defendants on notice of her claims, which she has. Moreover, ruling the claims in Count I and II are duplicative would be premature at this time. A better developed record may show a basis for both claims to proceed.

### 2. Qualified immunity.

Defendants also argue that they are entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Officers are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018).

Defendants argue that they cannot find a closely related case establishing that Defendants conduct was unlawful.  "Ordinarily, to show that the law was 'clearly established,' plaintiffs must point to a 'closely analogous case' finding the alleged violation unlawful." Reed v. Palmer, 906 F.3d 540, 547 (7th Cir. 2018) (quoting Findlay v. Lendermon, 722 F.3d 895, 899 (7th Cir. 2013)).  While a plaintiff "need not point to an identical case, [] 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).  That being said, "[i]n some rare cases, where the constitutional violation is patently obvious, the plaintiffs may not be required to present the court with any analogous cases." Id.  In that situation, a plaintiff "can demonstrate clearly established law by proving the defendant's conduct was 'so egregious and unreasonable that ... no reasonable [official] could have thought he was acting lawfully.'" Id. (quoting Jacobs v. City of Chicago, 215 F.3d 758, 767 (7th Cir. 2000)).

Plaintiff argues that dismissal based on qualified immunity is premature at this point.  Qualified immunity highly depends on the facts of the case.  Reed, 906 F.3d at 548.  As such, a "complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity

grounds." <u>Alvarado v. Litscher</u>, 267 F.3d 648, 651 (7th Cir. 2001).
As noted above, Plaintiff has sufficiently pled a possible violation of
Mr. Brigham's due process rights.  Plaintiff argues that Defendants'
misconduct continued for almost eight months, up to and including
the day of Mr. Brigham's fall.  Plaintiff also alleges that Defendants
were on notice of other inmates jumping and/or falling over the
railing in the Coles County Courthouse.  Discovery could disclose
Defendants conduct was "so egregious and unreasonable that ... no
reasonable [official] could have thought he was acting lawfully."
<u>Jacobs</u>, 215 F.3d at 767.  At this stage of the case, prior to the
completion of discovery, the Court finds dismissing Count II based
on qualified immunity is premature.

For those reasons, Defendants motion to dismiss Count II is
denied.

**B. Defendants are not entitled to dismissal of Plaintiff's state law claims under the Tort Immunity Act, and Plaintiff has sufficiently pled the requisite mental state for the state law claims.**

**1. "Escaping" prisoner.**

Pursuant to the Illinois Tort Immunity Act, "[n]either a local
public entity nor a public employee is liable for: . . . (b) Any injury

inflicted by an escaped or escaping prisoner." 745 ILCS 10/4-106(b). Defendants contend that Mr. Brigham escaped Defendant Bilbrey's custody and jumped to his death from the second floor. Plaintiff contests this characterization and argues that Mr. Brigham remained in Defendant Bilbrey's custody at all times, including when he fell over the courthouse railing. Plaintiff alleged in her Complaint that Mr. Brigham was in Defendant Bilbrey's custody at the time of Mr. Brigham's fall, but that Defendant Bilbrey lost visual contact with Mr. Brigham right before the fall.

The Court must accept all well-pled facts as true in ruling on Defendants' motion to dismiss. See Tamayo, 526 F.3d at 1081. Plaintiff has not alleged facts that would lead the Court to believe Mr. Brigham "escaped" Defendant Bilbrey's custody as contemplated by 745 ILCS 10/4-106(b). The facts before the Court and the parties' briefs do not resolve the issue in Defendants' favor that Mr. Brigham escaped or was an escaping prisoner. However, discovery may reveal new or different evidence. At this time, the Court finds that Tort Immunity Act's "escaped" prisoner language does not warrant dismissal. See Sidwell v. Cty. of Jersey, No. 05-CV-530-DRH, 2006 WL 1375224, at *6 (S.D. Ill. May 15, 2006)

(deciding similarly).  Therefore, the Court denies Defendant's motion to dismiss state law claims found in Counts V through VII.

### 2. Mental state.

Defendants next argue that Plaintiff failed to allege the correct mental state for the state law claims in Counts V (wrongful death), VI (survival action), and VII (negligent infliction of emotional distress).  Defendants contend that the Tort Immunity Act governs the state law claims, which requires an elevated mental state of willful and wanton misconduct.  What Defendants are arguing is that Plaintiff should have specifically stated the words "willful and wanton" in each Count.  That kind of factual detail is not necessary to give fair notice of Plaintiff's claims. <u>Chapman v. Yellow Cab Co.</u>, 875 F.3d 846, 848 (7th Cir. 2017) ("Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead claims rather than facts corresponding to the elements of a legal theory.").  Plaintiff need only provide a short and plain statement giving the defendant fair notice of the claims.  <u>Tamayo</u>, 526 F.3d at 1081.  Plaintiff has done so.  The claims set forth in Counts V through VII combined with the factual allegations contained throughout the Complaint are sufficient to put

Defendants on notice of Plaintiff's claims for wrongful death,

survival, and negligent infliction of emotional distress.  Moreover,

Plaintiff's Complaint does state that "the acts of Defendants-Officers

described in the above claims were willful and wanton."  See d/e 1,

¶ 107.  As such, Defendants' motion to dismiss Counts V, VI, and

VII is denied.

### C. Plaintiff sufficiently stated § 1983 claims in Counts I and II against Defendant Rankin.

In Counts I and II of the Complaint, Plaintiff alleges due

process violations pursuant to 42 U.S.C. § 1983 against all

Defendants, including Defendant Rankin.

To recover under § 1983, a plaintiff must prove that a

defendant was personally involved in the alleged constitutional

deprivation.  Minix v. Canarecci, 597 F.3d 824, 833 (7th Cir. 2010)

(quoting Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir.

2003)); see also Brady v. Gonzalez, 412 F. App'x 887, 888 (7th Cir.

2011) ("[I]n order to recover damages under § 1983, [a plaintiff]

must allege that the defendants were personally responsible for the

alleged deprivations of his constitutional rights.").  "Agency

principles of *respondeat superior* and vicarious liability" do not

apply to § 1983 claims. <u>Kinslow v. Pullara</u>, 538 F.3d 687, 692 (7th Cir. 2008).  Instead, a municipality or government official may be liable if its custom or policy causes the violation of a plaintiff's right. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978).

Defendants argue that Plaintiff has failed to allege facts that state a claim against Defendant Rankin individually.  Instead, Defendants contend that Plaintiff only alleged facts against agents of Defendant Rankin.  However, Plaintiff's Complaint adequately alleges facts that Defendant Rankin was personally involved in the deprivation of Mr. Brigham's rights.  In the Complaint, Plaintiff alleges that Defendant Rankin was "responsible for completing a 'Suicide Prevention Screening Form,'" knew Mr. Brigham required immediate mental health treatment and was a suicide risk, but he failed to provide the treatment, and knew of similar falls at the Coles County Courthouse prior to Mr. Brigham's fall.  <u>See</u> d/e 1, ¶¶ 25, 29, 30, 59, 75, 70.  Additionally, Plaintiff stated in her Response that she intentionally filed Counts I and II against Defendant Rankin in his individual capacity.  <u>See</u> d/e 14, pp. 9-11

Therefore, Defendant's motion to dismiss Defendant Rankin from Counts I and II is denied as Plaintiff has sufficiently pled personal involvement by Defendant Rankin.

**D. The Court strikes Plaintiff's request for punitive damages in Counts III and IV.**

Plaintiff seeks punitive damages under Counts I through IV of her Complaint.  <u>See</u> d/e 1.  Plaintiff also plans to request punitive damages under her Illinois state law claims if the Court allows her. <u>See</u> d/e 14, p. 11.  In her Response, Plaintiff states that she is only seeking punitive damages against Defendants in their individual capacities.  The Court assumes she is referencing Defendants Rankin, Bilbrey, Jackson, and John Doe in their individual capacities.

Defendants ask the Court to strike Plaintiff's request for punitive damages under Counts III and IV, the <u>Monell</u> claims. Defendants argue that punitive damages cannot be sought against a municipality.  <u>See</u> <u>City of Newport v. Facts Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) (holding that "that a municipality is immune from punitive damages under 42 U.S.C. § 1983.").  <u>Monell</u> claims are brought against an individual and/or entity in its official

capacity.  <u>See</u> <u>Monell</u>, 436 U.S. at 691 (1978) (holding that a local government is subject to suit as a "person" within the meaning of 42 U.S.C. § 1983).  Plaintiff admits that she is only seeking punitive damages against Defendants in their individual capacities.  Plaintiff has not cited any authority supporting punitive damages for a <u>Monell</u> claim.  Therefore, the Court grants Defendants request to strike Plaintiff's reference to punitive damages in the prayers for relief in Counts III and IV.

### E. Coles County will remain in the case.

Defendants argue that Defendant Coles County should remain in the case only for indemnification purposes.  <u>See</u> <u>Carver v. Sheriff of LaSalle County</u>, 324 F.3d 947, 948 (7th Cir. 2003) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, etc.) in an official capacity.  Because state law requires the county to pay, federal law deems it an indispensable party to the litigation.") (internal citation omitted).  Defendant contends that Coles County cannot be liable in its own capacity for any alleged failure to correct dangerous conditions at the Coles County Courthouse because Coles County is not responsible for

maintaining the Coles County Courthouse.  Instead, the Coles County Sheriff's office and its employees are responsible for maintaining the building.  Defendants cite an Illinois statute, which provides, "Sheriff custodian of courthouse and jail. He or she shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided."  55 ILCS 5/3-6017.

Plaintiff argues that Coles County is independently liable for failing to correct the dangerous conditions at the Coles County Courthouse and the extent of Defendant Rankin's authority to control the courthouse is unknown at this time.  As such, Plaintiff contends that dismissal of Coles County is premature.  The Court agrees with Plaintiff.  Defendants are correct that under Illinois law, a sheriff has custody of the courthouse, which includes the right to engage janitors.  See  55 ILCS 5/3-6017; People ex rel. Walsh v. Bd. of Comm'rs of Cook Cty., 397 Ill. 293, 300 (1947) ("The cases cited establish the principle that the sheriff of a county has, as an incident to his official duties, the custody of the courthouse and has the right to engage janitors to assist him in the performance of that duty.").  However, the sheriff's custody of a courthouse is not unlimited.  See Hardin v. Sangamon Cty., 71 Ill. App. 103, 114 (3d

Dist. 1897) ("The law does not recognize any estate or interest of the sheriff, possessory or other, in the court house or jail."); <u>Wade v. Pike Cty.</u>, 104 Ill. App. 2d 426, 429 (4th Dist. 1969) ("Custody and care' is not the same as providing 'proper rooms and offices'. 'Custody and care' gives to the Sheriff only the right to possess the court house in a custodial capacity. It is with the County Board where ultimate power lies."); <u>People ex rel. Goodman v. Wabash R. Co.</u>, 395 Ill. 520, 531 (1946) ("While the sheriff is entrusted with the care and custody of the courthouse, his authority is subject to the control of the county board.") (citing <u>Consol. Chem. Labs. v. Cass Cty.</u>, 322 Ill. App. 53, 55 (3d Dist. 1944)).  Illinois law also gives the county the power to incur debt to reconstruct or remodel an existing courthouse under certain circumstances.  <u>See</u> 55 ILCS 5/6-4010(a) ("Any county having a population under 300,000 may, by resolution of its county board, incur an indebtedness for the reconstruction and remodeling of an existing courthouse or the construction of a new courthouse . . . .").

Defendants also cite <u>Riley v. Cty. of Cook</u>, 682 F. Supp. 2d 856, 860-61 (N.D. Ill. 2010) to support their argument.  In <u>Riley</u>, the court held that the sheriff, not Cook County, was responsible for

implementing the policies and procedures of the Cook County Jail because the sheriff was exclusively charged with the custody and care of the county jail under Illinois law.  <u>Riley</u>, 682 F. Supp. 2d at 861.  However, <u>Riley</u> is inapposite to this case.  Here, the issue is whether only Defendant Rankin had control over the Coles County Courthouse whereas in <u>Riley</u> the issue was whether Cook County had control over the county jail.  The obvious distinction is that a sheriff's regular duties greatly involve the county jail.  However, a courthouse may involve many entities outside of the purview of a sheriff's duties, including the clerk's office, election office, vital records department, and assessor's office.

Coles County, therefore, should remain in the case for indemnification purposes.  Moreover, Coles County may be responsible for the condition of the Coles County Courthouse.  Therefore, Defendant's motion to dismiss Coles County as a party is denied.

**F. Plaintiff's references to the Illinois Constitution do not warrant removal from the Complaint.**

In the Complaint, Plaintiff references certain sections of the Illinois Constitution as a basis of jurisdiction for her cause of

action.  <u>See</u> d/e 1, ¶ 2.  Defendants argue that Plaintiff has failed to state a claim under the Illinois Constitution that is separate from the claims alleged under the United States Constitution.  Plaintiff argues that the Illinois Constitution "protects Plaintiff's rights to find remedy and justice in the law" and that Plaintiff's claims are brought pursuant to the Illinois Constitution "to account for the violation of the decedent's rights which are secured independent of the United States Constitution.  <u>See</u> d/e 14, p. 12-13.  However, Plaintiff's claim for wrongful death is brought pursuant to 740 ILCS 180/1, the survival action is brought pursuant to 755 ILCS 5/27-6, the negligent infliction of emotional distress is brought pursuant to Illinois common law, and indemnification pursuant to 745 ILCS 10/9/102.  <u>See</u> d/e 1.  Notably, in Plaintiff's Response, she does not identify what claims are brought pursuant to the Illinois Constitution.  Instead, Plaintiff states that she seeks to find the remedy under the Illinois Constitution.  <u>See</u> d/e 14, p. 13 ("Plaintiff also seeks to find appropriate remedy for the violation of such rights without such remedies being restricted by the limitations that arise under the causes of action to redress breaches of the United States Condition.").

Plaintiff has not pled a claim pursuant to the Illinois Constitution separate from the United States Constitution. Instead, Plaintiff alleges that the Illinois Constitution along with the United States Constitution provides Mr. Brigham's due process rights that Defendants allegedly violated. The Court will not strike references to the Illinois Constitution simply because it is duplicative.

## V. CONCLUSION

For the reasons stated, the Motion to Dismiss (d/e 11) filed by Defendants Coles County, Jimmy Rankin, William Bilbrey, and Samuel A. Jackson is DENIED in part and GRANTED in part. No claims or counts are dismissed from Plaintiff's Complaint. Defendants shall answer the Complaint on or before December 11, 2020.

**ENTERED: November 25, 2020**

**FOR THE COURT:**

_s/ Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**